IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 80843-5-I |
| | ) | |
| | ) | |
| | ) | |
| THOMAS QUINN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — When the State files a commitment petition pursuant to chapter 71.09 RCW for an alleged sexually violent predator (SVP), it can establish the alleged SVP is presently dangerous by proving the commission of a recent overt act. But the State is relieved of this burden if the trial court concludes the alleged SVP was, at the time the petition was filed, incarcerated for an act that qualified as a recent overt act, as defined in RCW 71.09.020.

Thomas Quinn alleges the trial court erred by concluding his possession of child pornography qualified as a recent overt act because the court's findings of fact were based upon disputed or unadjudicated allegations from the records of his established convictions. Because a trial court can consider the entire record of an alleged SVP's established convictions when weighing this question, the court's findings of fact were not improperly entered. And because it properly applied the facts to the law, Quinn fails to prove the court erred by concluding his possession of child pornography was a recent overt act.

Therefore, we affirm.

FACTS

In 1993, Thomas Quinn pleaded guilty to two counts of first degree child molestation. The seven-year-old victims were twin sisters, and Quinn's fiancé had been babysitting them. Quinn exposed his penis to the girls and put his hands in their underwear. According to Quinn, he merely spanked each girl once because he caught them watching the Playboy Channel, and he pleaded guilty because his mother and fiancé were "freaking out" and told him to "take the offer."[1]

In 2005, Quinn pleaded guilty to third degree assault and unlawful imprisonment. He had originally been charged with indecent liberties and unlawful imprisonment. The victim was a 15-year-old girl who had left a neighboring apartment after a fight with her aunt. Quinn—who was acquainted with the victim— grabbed her, pulled her into his apartment, attempted to grope her breasts, and put his hands inside of her pants and underwear. According to Quinn, the victim lied about the entire encounter, merely spending the night on his couch. Quinn explained he pleaded guilty "[b]ecause of my mom and my wife," as they thought it was a good idea.[2]

In 2010, Quinn pleaded guilty to two counts of possession of child pornography and was sentenced to 84 months incarceration. The pictures were in Quinn's junk drawer. Quinn admitted he possessed the pictures and regretted having them. But he explained that the pictures belonged to Scott, a prison friend whose

[1] Clerk's Papers (CP) at 350-351.
[2] CP at 362-63.

2

last name Quinn did not know, and that he had forgotten for five years about agreeing to "hold onto 'em until [Scott] gets back" from "out of state somewhere."[3]

In 2017, while he was still incarcerated, the State petitioned for Quinn to be civilly committed as an SVP. The State alleged possessing child pornography was a "recent overt act" demonstrating Quinn's present dangerousness.[4] Because the State filed the petition while Quinn was incarcerated, it moved for a pretrial determination that the recent overt act alleged satisfied the requirements of the SVP statute as a matter of law and did not need to be proven to the jury. The court entered findings of fact, including findings based upon information in charging documents and other materials from the trial records of Quinn's convictions. It concluded Quinn's possession of child pornography constituted a recent overt act "that would create a reasonable apprehension of such harm of a sexually violent nature in the mind of an objective person who knows of the history and mental condition of [Quinn]."[5] After a trial, a jury concluded Quinn was an SVP, and the court ordered him confined to the Special Commitment Center.

Quinn appeals.

## ANALYSIS

To prove a person is an SVP, the State must establish he has a "'mental abnormality' which 'is tied to present dangerousness.'"[6] The State can establish

---

[3] CP at 378.

[4] CP at 652.

[5] CP at 277.

[6] In re Det. of Marshall v. State, 156 Wn.2d 150, 157, 125 P.3d 111 (2005) (quoting In re Det. of Henrickson v. State, 140 Wn.2d 686, 692, 2 P.3d 473 (2000)).

"present dangerousness" by showing proof of a recent overt act.[7]  It is not required to prove to the jury that the person committed a recent overt act when, on the day the petition is filed, the person is incarcerated for an act that itself qualifies as a recent overt act.[8]  Under those circumstances, whether an act qualifies as a recent overt act, as defined in RCW 71.09.020(13), is a question for the court to decide.[9]

A "recent overt act" is "any act, threat, or combination thereof that . . . creates a reasonable apprehension of [sexually violent] harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act or behaviors."[10]  This pretrial determination presents a mixed question of law and fact.[11]  The trial court first makes "an inquiry . . . into the factual circumstances of the individual's history and mental condition" and "second, a legal inquiry . . . as to whether an objective person knowing the factual circumstances of the individual's history and mental condition would have a reasonable apprehension that the individual's act would cause harm of a sexually violent nature."[12]  Because this is a

---

[7] Id. at 157.

[8] In re Det. of Brown, 154 Wn. App. 116, 122, 225 P.3d 1028 (2010) (citing Henrickson, 140 Wn.2d at 695).

[9] Id. at 123-24.  We note that since trial, the legislature amended RCW 71.09.020 but did not alter definitions or terms relevant here.  LAWS OF 2021, ch. 236, § 2.  Accordingly, we cite to the current statute.

[10] RCW 71.09.020(12).  A "recent overt act" can also be "any act, threat, or combination thereof that has . . . caused harm of a sexually violent nature."  Id.  The State does not allege Quinn's possession of child pornography qualifies.

[11] In re Det. of Leck, 180 Wn. App. 492, 509, 334 P.3d 1109 (2014) (citing Marshall, 156 Wn.2d at 158).

[12] Marshall, 156 Wn.2d at 158 (citing State v. McNutt, 124 Wn. App. 344, 350, 101 P.3d 422 (2004)).

mixed question of law and fact, we must establish the relevant facts, determine the applicable law, and apply the law to the facts.[13]  We review the trial court's application of the law de novo.[14]

Relying upon State v. Brown,[15] Quinn contends several of the trial court's findings of fact were improperly entered because they were based upon disputed or unadjudicated facts when "[t]his pretrial determination by the court is limited to already proven facts."[16]  Brown does not support his position.

In that case, Brown was incarcerated for possession of child pornography when the State filed its petition for civil commitment, and the trial court determined the possession crime constituted a recent overt act.[17]  He argued the trial court had to conduct an evidentiary hearing before entering findings of fact about an alleged recent overt act.[18]  This court disagreed.[19]  When a trial court conducts a pretrial

---

[13] State v. Samalia, 186 Wn.2d 262, 269, 375 P.3d 1082 (2016) (citing Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 403, 858 P.2d 494 (1993)).  Quinn asserts we should apply a de novo standard and disregard the trial court's findings of fact.  He relies upon In re Detention of Anderson, 166 Wn.2d 543, 549, 211 P.3d 994 (2009), for support.  But the Anderson court did not review any of the trial court's findings of fact because they were unchallenged.  166 Wn.2d at 549.  Nor did it overrule precedent establishing the trial court's inquiry as a mixed question of law and fact.

[14] Samalia, 186 Wn.2d at 269 (citing Anderson, 166 Wn.2d at 555).

[15] 154 Wn. App. 116, 225 P.3d 1028 (2010).

[16] Appellant's Br. at 14.  The State argues Quinn waived this argument because he did not make it before the trial court.  Under RAP 2.5(a), we can exercise our discretion to decline to review an error not raised below.  On this record, we will reach the merits of Quinn's appeal.

[17] Brown, 154 Wn. App. at 120.

[18] Id. at 122.

[19] Id. at 124-25.

recent overt act hearing, it is not acting as a fact finder.[20] It "need only review facts already established, including those established in the record of the conviction resulting in incarceration."[21] "[T]he original proceeding provided Brown with an opportunity to contest the factual allegations supporting the conviction," and SVP adjudication was not an opportunity to relitigate the facts supporting his convictions.[22]

Rather than standing as a mandatory limitation on a trial court's consideration of the evidence, Brown explains that a trial court can consider the entire record supporting established convictions. And other cases illustrate a trial court's discretion to consider facts beyond those established by the conviction resulting in incarceration.

In State v. McNutt, this court reviewed a trial court's pretrial "recent overt act" determination.[23] It explained that the trial court erred to the extent it made a "per se" legal conclusion that an offender's communications with a minor were a "recent overt act."[24] Before making a legal conclusion, "[a] factual inquiry is necessary" to determine the person's history and mental condition.[25]

The court then considered the offender's diagnoses and history. The offender was diagnosed with pedophilia and sexual masochism. In 1973, he had been

---

[20] Id. at 125.

[21] Id. at 125.

[22] Id.

[23] 124 Wn. App. 344, 349-50, 101 P.3d 422 (2004).

[24] Id.

[25] Id. at 350.

convicted on a single count of indecent liberties.[26] In 1998, the offender entered an Alford[27] plea on a single felony charge of communicating with a minor for immoral purposes.[28] In addition to his prior convictions, he had "a history of offering young boys money, beer, or cigarettes to perform sadistic acts upon him while he masturbates."[29] Although the offender had entered an Alford plea, the court also considered the factual allegations behind his current incarceration for communication with a minor for immoral purposes.[30] The State alleged the offender had invited a 14-year-old girl to his home, given her beer, and asked the girl to perform various violent and sexual acts with him.[31]

During his incarceration from this conviction, the State filed a commitment petition.[32] Based upon the offender's diagnoses and history, the court concluded his communications with the girl "could only create a reasonable apprehension of harm of a sexually violent nature in the mind of an objective person."[33]

Similarly, in In re Detention of Hovinga, this court again relied upon unadjudicated facts to conclude an accused SVP had been incarcerated for a

---

[26] Id. at 346.

[27] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[28] McNutt, 124 Wn. App. at 346.

[29] Id. at 351.

[30] Id. at 349, 351.

[31] Id. at 351.

[32] Id. at 346.

[33] Id. at 351.

statutory "recent overt act."[34] The accused SVP was first incarcerated in 1981 after entering an Alford plea to first degree statutory rape of a nine-year-old girl.[35] He was released on parole in 1988.[36] After a store security camera recorded him following young girls around the store while masturbating, his parole was revoked.[37] The State filed the commitment petition while the accused SVP was still incarcerated following his parole violation.[38] In his parole revocation hearing, the accused SVP admitted he had been recorded following the girls while masturbating, and he admitted to doing the same thing six to eight other times.[39] Based upon this history and the accused SVP's mental conditions, the court concluded the act that caused his parole revocation constituted a "recent overt act."[40]

Here, Quinn challenges several written and oral findings of fact because they were based upon "unproven, disputed allegations."[41] But, as shown by Brown, McNutt, and Hovinga, the trial court is free to consider more than a verdict form or stipulated facts in a plea agreement when evaluating, as RCW 71.09.020(13) requires, an accused SVP's "history and mental conditions" to determine if an act constitutes a "recent overt act." Because the trial court could consider a range of

---

[34] 132 Wn. App. 16, 24, 130 P.3d 830 (2006).

[35] Id. at 18.

[36] Id. at 19.

[37] Id. at 19.

[38] Id. at 22.

[39] Id. at 24.

[40] Id.

[41] Appellant's Br. at 16.

evidence from Quinn's history of established convictions to determine whether his 2010 possession of child pornography constituted a recent overt act, the court did not err by entering its written and oral findings of fact.[42]

Quinn contends the trial court erred by concluding his possession of child pornography constituted a recent overt act when "[t]here was no evidence that possessing two images of pornography triggered him to act in a sexually violent manner."[43] But the correct legal question is "whether an objective person knowing the factual circumstances of the individual's history and mental condition would have a reasonable apprehension that the individual's act would cause harm of a sexually violent nature."[44] The record here supports the trial court's conclusion.

Quinn has been diagnosed with pedophilic disorder, nonexclusive type, with a sexual attraction to females, antisocial personality disorder, an intellectual disability, and two substance use disorders. Quinn has reported he does "stupid things" and becomes "angry and mean" when drinking.[45] Substance use may have played a role in some of his sexual conduct, such as assaulting and falsely imprisoning the 15-year-old. Also, the court found Quinn has never acknowledged his inappropriate

---

[42] Although Quinn styles his assignments of error as a substantial evidence challenge, he makes legal arguments only and does not argue insufficient evidence supported the trial court's findings. Nor does he cite to the record to demonstrate the insufficiency of the evidence. Thus, we decline to review the challenged findings of fact for substantial evidence. See Matter of Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998) ("It is incumbent on counsel to present the court with argument as to why specific findings of the trial court are not supported by the evidence and to cite to the record to support that argument.") (citing RAP 10.3).

[43] Appellant's Br. at 22.

[44] Marshall, 156 Wn.2d at 158 (citing McNutt, 124 Wn. App. at 350).

[45] CP at 524.

sexual behavior. It found he was an "untreated" sex offender who has declined to participate in treatment, even when offered the opportunity.[46] And it found he "clearly has the ability to make plans and execute them" and has poor impulse control.[47]

In 1993, Quinn was convicted of a violent sex crime for molesting two seven-year-old girls. He was convicted of third degree assault and false imprisonment in 2005 after dragging a 15-year-old girl into his home, attempting to grope her breasts, and forcing his hands down her pants. And in 2010, although the State chose to charge Quinn with only two counts of possession of child pornography, detectives actually found 10 images of child pornography showing prepubescent girls in sexually provocative positions. Officers found photos Quinn took of a prepubescent girl's clothed vaginal area and of young children wrestling. They also found photos of neighborhood children that Quinn took "from his apartment window as if he was surveilling the children."[48]

In addition to the child pornography and photos of neighborhood children, police officers found three pairs of girl's underwear in Quinn's bedroom, which were stashed with child pornography under his mattress. They found "countless" children's toys, stickers, magazines, stuffed animals, and costumes in Quinn's bedroom.[49] Officers found dozens of scraps of paper each with female names, phone numbers, and social networking website screen names.

---

[46] Report of Proceedings (Feb. 28, 2019) at 17.

[47] Id. at 16.

[48] Id. at 15.

[49] CP at 275.

Based upon Quinn's mental conditions and history, an objective person would have a reasonable apprehension of harm of a sexually violent nature due to Quinn's possession of child pornography. The trial court did not err by concluding Quinn's 2010 convictions constituted a recent overt act.

Therefore, we affirm.

WE CONCUR: